UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES | CRIMINAL ACTION |
| VERSUS | |
| TROY JAMES[1] | NO: 11-CR-00025-BAJ-EWD |

### RULING AND ORDER

This matter is before the Court pursuant to an order of the United States Magistrate Judge setting forth a final revocation hearing in the above captioned matter. (Doc. 75). For the reasons set forth below, Troy James' ("Defendant") supervised release **SHALL NOT** be revoked.

I. ALLEGATIONS

On July 19, 2011, Defendant pleaded guilty to selling 50 grams of crack cocaine base in violation of Title 21, United States Code, Section 841(a)(1). (Doc. 7). On March 28, 2012, Defendant was sentenced to a term of 50 months incarceration, and a term of supervised release of five years. (Doc. 22). On May 20, 2015, the Court reduced Plaintiff's sentence to 41 months under 28 U.S.C. § 3582.[2] (Doc. 46). Defendant was released from the custody of the Bureau of Prisons on November 11, 2015 and his

---

[1] At the time the Violation Report for the final revocation hearing was submitted, Defendant had a pending charge in the 23rd District Court of Ascension Parish, Donaldsonville Office, bearing the Docket Number 38089. Defendant also had charges pending in the United States District Court for the Middle District of Louisiana bearing the Docket Number 18-CR-00021-002.

[2] Defendant was re-sentenced pursuant to Amendment 782 to the United States Sentencing Guidelines which lowered Defendant's guideline range from 46-57 months to 37-46 months. (Doc. 45).

1

supervised release commenced. (Doc. 48). On October 11, 2017, a warrant for Defendant's arrest was issued, and Defendant was arrested on January 3, 2018 for his suspected involvement in a shooting and failed drug deal having transpired on October 2,2017.

The United States alleges that on Monday October 2, 2017, the Ascension Parish Sheriff's Office ("APSO") was dispatched to a shooting that involved Defendant. (Violation Report at p. 1). The United States claims that through the APSO's investigation of the circumstances surrounding the shooting, it learned that Lennis Godeaux, a resident of the "Trailer Land" neighborhood[3], was instructed by Crystal LeBlanc to purchase $50.00 worth of crack cocaine from Defendant. *(Id.)*. The United States further claims that during the transaction, a gunman appeared and fired three shots into the vehicle, striking Defendant. (*Id.*). The United States asserts that upon locating Defendant at Our Lady of the Lake Hospital, APSO detectives recovered approximately $49.00 in cash in one of Defendant's pockets, and approximately $246.00 in cash in another, the $49.00 being consistent with the amount for which Defendant sold the crack cocaine. (*Id.*). Defendant was charged with under La. Stat. Ann. § 14:26 (Criminal Conspiracy), La. Stat. Ann. § 14:27 (Attempted Crime), and La. Stat. Ann. § 40:967(A) (Possession with the Intent to Distribute Cocaine). (*Id.*). The United States alleges that Defendant also committed a federal crime by attempting to sell crack cocaine, in violation of 21 U.S.C. §§ 846, 841. (*Id.*). Defendant denies the allegations in the violation report.

---

[3] The area colloquially referred to as "Trailer Land" is a trailer park located in Ascension Parish.

## II. THE EVIDENCE OFFERED AT THE HEARING

Lieutenant Tony Nefkin of the APSO testified that he responded to a call of a shooting in Trailer Land, an area which he claimed was known for drug activity. Lt. Nefkin further testified that he was rerouted to the fire station on Hoo Shoo Too Road in Baton Rouge to intercept Defendant, who had fled there after the shooting and was receiving medical treatment. Lt. Nefkin testified that upon arrival, he observed that the car doors were open, cash was visible on the passenger side seat of the car, the keys were in the ignition, and blood was present in the interior of the vehicle. Lt. Nefkin questioned Courtney Dunn, Defendant's girlfriend, about the events that transpired. Lt. Nefkin testified that Dunn told him that a shooting occurred at a red light at an intersection by Winn Dixie on Highway 73 and that she drove to the firehouse after the shooting. Lt. Nefkin further claimed that Dunn said that the shooter wore a black hoodie and ran away after firing into the vehicle. Lt. Nefkin further testified that he observed that the windows of Defendant's vehicle were down, which Lt. Nefkin found odd, given the inclement weather that day.

Cheryll Falcon was also called to testify. However, upon learning that Falcon had not spoken to an attorney, the Court deferred her testimony until she could confer with court-appointed counsel.

Lennis Godeaux testified that he was a resident of Trailer Land who was arrested at the scene of the shooting, and questioned by APSO deputies. Godeaux claimed that he and Defendant were at some point being held in the same prison.

3

However, Godeaux thereafter asserted his Fifth Amendment right and refused to answer any further questions.

Officer Todd Bourgeois testified that he travelled to the hospital with Defendant and Dunn from the fire station. Officer Bourgeois asserted that he interviewed both Defendant and Dunn in the waiting room of the hospital. Dunn admitted that she and Defendant were in the area to visit Godeaux. Officer Bourgeois claimed that Defendant said he wanted to visit Godeaux to inquire into the whereabouts of Defendant's old roommate (who he did not identify by name). Officer Bourgeois testified that he searched Defendant's pants pockets and found $49.00 in one pocket and $246.00 in the other.

Lt. Juan Vera testified that he interviewed Godeaux at 1:30 AM, the morning after the shooting. Lt. Vera's testimony largely pertained to the recorded interview he conducted with Godeaux, prior to Godeaux's arrest. In the recording, Godeaux explained that Defendant[4] was a drug dealer. Godeaux told Lt. Vera that on the night in question, Crystal Leblanc knocked on the door, gave him cocaine and money, and directed him to purchase crack cocaine from Defendant. Goddeaux also told Lt. Vera that when Defendant arrived at his house, he did not notice anyone in the passenger seat. Goddeaux stated in the recording that shortly after the drug transaction had begun, the shooter shot into Defendant's vehicle. Lt. Vera testified that Godeaux was arrested for attempting to purchase narcotics and criminal conspiracy. Lt. Vera also testified that he showed Godeaux a photo lineup where he identified Defendant as

---

[4] Defendant is consistently referred to by his nickname, "Black," during the recording.

4

the person from whom he was attempting to purchase drugs. Lt. Vera also testified that no narcotics were recovered that night.

Deputy Joshua Sproul testified about the efforts to locate Leblanc, including visiting an old address, and calling her aunt, with whom Dpy. Sproul had reason to believe Leblanc was residing. Dpy. Sproul indicated that he spoke to Leblanc once over the phone, but was otherwise unable to contact her.

Dunn testified that she was with Defendant when the shooting occurred. She claimed that they were visiting Trailer Land to speak to Godeaux about an altercation that occurred between Godeaux and an unidentified person a week prior. She stated that while speaking to Godeaux, Defendant made no reference to drugs, and there was no exchange of money for drugs at that time. Dunn claimed that she became concerned when Godeaux suddenly began to speak loudly in a seemingly angry tone, the purpose of which, Dunn opined, was to warn Defendant of impending danger. Dunn testified that while Godeaux was speaking in this manner, the shooter ran to the side of the vehicle and fired three or four shots into the car.

After having been provided with counsel, Falcon testified that she has known Godeaux, Leblanc, and Defendant for over 20 years. Falcon admitted to previously being a drug user, but that she was no longer involved with the drug trade. Falcon claimed that she heard three or four gunshots coming from near Godeaux's house, and called the police.

Lt. Vera testified about a video interview of Falcon taken the morning after the incident in question. In the video, Falcon can be heard explaining to Lt. Vera that Godeaux told her that Leblanc "set [Defendant] up" and arranged for him to be killed at the drug deal at Godeaux's house. Falcon also described how Leblanc called Defendant to get him to meet her at Godeaux's house to purchase crack cocaine. It is unclear from Falcon's testimony how she knew about this. Falcon claimed that another drug dealer, Dereck Galiano[5] (a/k/a "Red") and Black got into an altercation sometime prior to the incident, each claiming that Godeaux was exclusively their customer. Falcon told her that Godeaux said Leblanc gave him cash, and told him to purchase crack cocaine from Defendant. Falcon did not claim to witness the alleged attempted drug deal.

### III. DISCUSSION

A district court may revoke a defendant's supervised release if it finds by a preponderance of the evidence that a condition of release has been violated. *United States v. McCormick*, 54 F.3d 214, 219 (5th Cir. 1995). To establish a claim by a preponderance of the evidence means to prove something is more likely to have occurred that than not. COMMITTEE ON PATTERN JURY INSTRUCTIONS, DISTRICT JUDGES ASSOCIATION, 5TH CIRCUIT, PATTERN JURY INSTRUCTIONS (CIVIL CASES) 30 (2016). The Court, having listened to the testimony presented during the revocation hearing,

---

[5] Falcon was unsure whether this was "Red's" actual name, but believed that it was.

6

finds that the United States has not established by a preponderance of the evidence that Defendant attempted to sell crack cocaine.

Dunn's testimony was contradictory and inconsistent with the testimony of other witnesses. At various times throughout her testimony, Dunn reportedly claimed to officers that the shooting took place at an intersection in front of a Winn Dixie store *near* Trailer Land, or that the shooting took place while Defendant was speaking to Godeaux *in* Trailer Land. When confronted with the conflicting nature of her testimony, Dunn claimed that she was using the intersection as a landmark, but that she also remembers Defendant being shot at the Winn Dixie. Officer Bourgeois testified that Defendant himself stated that the shooting occurred in Trailer Land after he visited the area to ask Godeaux about the whereabouts of a mutual friend.

The Court also finds that Dunn's statements are inconsistent with statements made by Falcon, who originally called the police after having heard three or four gunshots coming from the vicinity of Godeaux's home. In fact, the only person who alleged that the shooting took place anywhere other than Godeaux's house in Trailer Land was Dunn. Due to the multiple inconsistencies in Dunn's testimony, the Court finds that her testimony lacks credibility.

In Godeaux's interview with Detective Vera, he claimed that he was asked by Leblanc to buy fifty dollars of crack cocaine from Defendant, and that Leblanc provided him the money. The United States contends that this statement is

consistent with testimony from Officer Bourgeois, who found approximately $49.00 in one of Defendant's pockets, and $246.00 in the other pocket immediately after the shooting, which was close to the alleged amount paid for the drugs. As noted, Godeaux invoked his Fifth Amendment right against self-incrimination, refused to provide any substantive testimony at the revocation hearing, and is considered to be an unavailable witness for the purposes of the information presented by Detective Vera through the audio recording.

The Court is unwilling to make a credibility finding from statements made by an unavailable declarant in this instance.[6] The Court was unable to assess Godeaux's demeanor and other indicia of truthfulness during the interview, and would otherwise be required to make a credibility determination based on low quality recorded testimony. Thus, the Court cannot credit his statements here.

The allegation that Defendant attempted to sell crack cocaine to Godeaux are thus comprised of uncorroborated recorded statements made by Godeaux and Falcon after their arrests, and the $49.00 found in Defendant's pockets after the shooting. No crack cocaine was found at the scene of the shooting, on Defendant's person, or in his vehicle, nor was the money found in Defendant's pocket tested for crack cocaine residue. Further, the United States alleges that Defendant received $50.00 for the crack cocaine, not "approximately $49.00." While this discrepancy may seem trivial,

---

[6] A Court may consider a witness' demeanor, vocal inflection, internal consistency of the testimony, documentary evidence, and other factors when making a credibility determination. *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985).

8

the United States did not adequately address or explain the reason for the discrepancy in the amount of money alleged to have been exchanged for the drugs. Even if the Court ignores the discrepancy in the amount of money recovered, the $49.00 was found in Defendant's pants pockets along with an additional $246.00 in another pocket, further obfuscating the true origin of the $49.00.

Although Falcon claims to have knowledge of the circumstances surrounding the alleged shooting, she has no personal knowledge of the circumstances surrounding the alleged drug deal itself. Therefore, the Court finds that her testimony has limited probative value to the issue of whether Defendant actually attempted to sell drugs to Godeaux.

Taken together, the elements of a violation are simply not met here, and the Court is not permitted to accept conjecture and uncorroborated suspicions in its evaluation of the evidence. In sum, the Court cannot conclude, based on the evidence, that it is more likely than not that Defendant participated in an illicit rug transaction, and in doing so, violated the terms of his supervised release.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that the Defendant's supervised release **SHALL NOT** be revoked.

Baton Rouge, Louisiana, this 20th day of September, 2019.

_____
JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA